**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
                                                  :

WALKIE CHECK PRODUCTIONS, LLC,       :

                   Plaintiff       :   Case No. 1:21-CV-01214-KPF

            -against-       :   Hon. Katherine Polk Failla

VIACOMCBS INC., BLACK ENTERTAINMENT  :
TELEVISION LLC d/b/a BET NETWORKS, and :
BET PRODUCTIONS IV, LLC,         :

             Defendants.     :

                                                  :
-------------------------------------------------------------- X


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LOEB & LOEB LLP
Wook Hwang
Mary Jean Kim
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Attorneys for Defendants ViacomCBS Inc.*
*n/k/a Paramount Global, Black*
*Entertainment Television LLC and BET*
*Productions IV, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................1

STATEMENT OF FACTS .............................................................................................3

I. THE PARTIES' WORKS...........................................................................................3

    A. Plaintiff's "House Party" Treatment ...............................................................3

    B. BET's Livestreamed House Party Series ........................................................4

II. PROCEDURAL HISTORY........................................................................................6

    A. Defendants' Prior Motion to Dismiss .............................................................6

    B. The Parties Engage in Limited Discovery on Defendants' Livestreamed Episodes and Promotional Materials for the BET Series.........................................7

ARGUMENT ..................................................................................................................8

I. SUMMARY JUDGMENT LEGAL STANDARDS ...................................................8

II. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS THERE IS NO GENUINE ISSUE OF FACT WITH RESPECT TO SUBSTANTIAL SIMILARITY BETWEEN THE PARTIES' WORKS .......................10

    A. Applicable Legal Standard............................................................................10

    B. Discovery Has Confirmed That There is *No* Substantial Similarity Between the BET Series and the Protectable Elements of Plaintiff's Treatment ................13

        1. There are No Protectable Similarities Between the BET Series and Plaintiff's Treatment .......................................................13

    C. A Comparison of Total Concept and Feel Reveals Distinct and Entirely Dissimilar Works ................................................................17

III. PLAINTIFF HAS NO EVIDENCE TO SUPPORT ITS THEORY THAT DEFENDANTS' SERIES IS SUBSTANTIALLY SIMILAR IN PROTECTABLE ELEMENTS TO PLAINTIFF'S TREATMENT ...............................20

CONCLUSION.............................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdin v. CBS Broad., Inc.*,
   971 F.3d 57 (2d Cir. 2020)............................................................................*passim*

*Alexander v. Murdoch*,
   502 F. App'x 107 (2d Cir. 2012) .............................................................................12

*Allen v. Scholastic Inc.*,
   739 F. Supp. 2d 642 (S.D.N.Y. 2011)......................................................................12

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...................................................................................................9

*Arden v. Columbia Pictures Indus., Inc.*,
   908 F. Supp. 1248 (S.D.N.Y. 1995).........................................................................16

*Bell v. Blaze Magazine*,
   No. 99 CIV 12342 (RCC), 2001 U.S. Dist. LEXIS 2783
   (S.D.N.Y. Mar. 15, 2001) .........................................................................................14

*Canal+ Image UK, Ltd. v. Lutvak*,
   773 F. Supp. 2d 419 (S.D.N.Y. 2011)................................................................11, 12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).........................................................................................8, 9, 20

*Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Trust Co.*,
   93 F.3d 1064 (2d Cir. 1996).......................................................................................9

*Cisneros Design v. Bd. of Cnty. Comm'rs of Santa Fe*,
   No. 20-818 .................................................................................................................15

*Contemporary Mission v. U.S. Postal Serv.*,
   648 F.2d 97 (2d Cir. 1981)........................................................................................20

*Cordiano v. Metacon Gun Club, Inc.*,
   575 F.3d 199 (2d Cir. 2009).......................................................................................9

*Crane v. Poetic Prods.*,
   593 F. Supp. 2d 585 (S.D.N.Y. 2009),
   *aff'd*, 351 F. App'x 516 (2d Cir. 2009)....................................................................12

*Dean v. Cameron*,
    53 F. Supp. 3d 641 (S.D.N.Y. 2014)............................................................................12

*Dickerson v. WB Studio Enters.*,
    276 F. Supp. 3d 167 (S.D.N.Y. 2017)..........................................................................12

*Dillon v. NBCUniversal Media, LLC*,
    No. CV 12-09728 SJO, 2013 U.S. Dist. LEXIS 100733
    (C.D. Cal. June 18, 2013) ...........................................................................................16

*DiTocco v. Riordan*,
    496 F. App'x 126 (2d Cir. 2012) .................................................................................12

*Fulks v. Knowles-Carter*,
    207 F. Supp. 3d 274 (S.D.N.Y. 2016)..........................................................................15

*Green v. Harbach*,
    750 F. App'x 57 (2d Cir. 2019) ...................................................................................12

*Guerilla Funk Recordings & Filmworks, LLC v. Hines*,
    No. CV11-03167 AHM, 2012 U.S. Dist. LEXIS 199904
    (C.D. Cal. Apr. 18, 2012)......................................................................................16, 22

*Hallford v. Fox Entm't Grp., Inc.*,
    No. 12 Civ. 1806 (WHP), 2013 U.S. Dist. LEXIS 19625
    (S.D.N.Y. Feb. 13, 2013).............................................................................................12

*Hayuk v. Starbucks Corp.*,
    157 F. Supp. 3d 285 (S.D.N.Y. 2016).....................................................................12, 19

*Jones v. CBS, Inc.*,
    733 F. Supp. 748 (S.D.N.Y. 1990) ..............................................................................12

*Kaye v. Cartoon Network, Inc.*,
    297 F. Supp. 3d 362 (S.D.N.Y. 2017)..........................................................................12

*Lapine v. Seinfeld*,
    No. 08 Civ. 128, 2009 U.S. Dist. LEXIS 82304
    (S.D.N.Y. Sept. 10, 2009), *aff'd*, 375 F. App'x 81 (2d Cir. 2010) ...........................11

*Latimore v. NBC Universal TV Studio*,
    480 F. App'x 649 (2d Cir. 2012) .............................................................................12, 22

*Littel v. Twentieth Century Fox Film Corp.*,
    No. 89 CIV 8526 (DLC), 1995 U.S. Dist. LEXIS 9340
    (S.D.N.Y. July 6, 1995) .......................................................................................... 14-15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..................................................................................................9

*McClellan v. Smith*,
    439 F.3d 137 (2d Cir. 2006)....................................................................................9

*McDonald v. West*,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015),
    *aff'd*, 669 F. App'x 59 (2d Cir. 2016)....................................................................14

*Montgomery v. NBC TV*,
    833 F. App'x 361 (2d Cir. 2020) ...........................................................................12

*Muller v. Twentieth Century Fox Film Corp.*,
    794 F. Supp. 2d 429 (S.D.N.Y. 2011), *aff'd sub nom*,
    *Muller v. Anderson*, 501 F. App'x 81 (2d Cir. 2012) ...........................................12

*Nobile v. Watts*,
    747 F. App'x 879 (2d Cir. 2018) ...............................................................11, 12, 16

*Paddington Partners v. Bouchard*,
    34 F.3d 1132 (2d Cir. 1994)..................................................................................22

*Papazian v. Sony Entm't*,
    No. 16-cv-07911 (RJS), 2017 U.S. Dist. LEXIS 164217
    (S.D.N.Y. Sept. 28, 2017)......................................................................................22

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010)........................................................................10, 11, 12

*Reflex Media, Inc. v. Pilgrim Studios, Inc.*,
    No. CV 18-2260-GW(FFMx), 2018 U.S. Dist. LEXIS 220643
    (C.D. Cal. Aug. 27, 2018)......................................................................................14

*Rodriguez v. Heidi Klum Co., LLC*,
    No. 05 Civ. 10218 (LAP), 2008 U.S. Dist. LEXIS 80805
    (S.D.N.Y. Sept. 30, 2008)................................................................................12, 16

*Semetex Corp. v. UBAF Arab Am. Bank*,
    853 F. Supp. 759 (S.D.N.Y. 1994),
    *aff'd*, 51 F.3d 13 (2d Cir. 1995)........................................................................9, 20

*Senno v. Elmsford Union Free Sch. Dist.*,
    812 F. Supp. 2d 454 (S.D.N.Y. 2011)..............................................................2, 8, 9

*Sheldon Abend Rev. Tr. v. Spielberg*,
    748 F. Supp. 2d 200 (S.D.N.Y. 2010)................................................10, 11, 12, 17

*Shull v. TBTF Prods.*,
No. 20-3529, 2021 U.S. App. LEXIS 21220
(2d Cir. July 19, 2021) ....................................................................................12

*Torah Soft Ltd. v. Drosnin*,
136 F. Supp. 2d 276 (S.D.N.Y. 2001)...............................................................17

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
338 F.3d 127 (2d Cir. 2003)......................................................................15, 17

*Vacchi v. E\*Trade Fin. Corp.*,
No. 19cv3505 (DLC), 2019 U.S. Dist. LEXIS 156972
(S.D.N.Y. Sept. 13, 2019).................................................................................22

*Walker v. Time Life Films, Inc.*,
784 F.2d 44 (2d Cir. 1986)......................................................................... 11, 14

*Ward v. Barnes & Noble, Inc.*,
93 F. Supp. 3d 193 (S.D.N.Y. 2015).....................................................2, 9, 15, 20

*Williams v. A&E TV Networks*,
122 F. Supp. 3d 157 (S.D.N.Y. 2015)...........................................................17, 19

*Williams v. Crichton*,
84 F.3d 581 (2d Cir. 1996)..................................................................11, 12, 18

*Willis v. HBO*,
57 F. App'x 902 (2d Cir. 2003) ........................................................................12

*Willis v. HBO*,
No. 00 Civ. 2500 (JSM), 2001 U.S. Dist. LEXIS 17887
(S.D.N.Y. Nov. 5, 2001), *aff'd*, 57 F. App'x 902 (2d Cir. 2003) ..........................16

*Zalewski v. Cicero Builder Dev. Inc.*,
754 F.3d 95 (2d Cir. 2014)...............................................................................11

## Statutes And Rules

17 U.S.C. § 102(b) ............................................................................................17

Fed. R. Civ. P. 12(b)(6).......................................................................................6

Fed. R. Civ. P. 56 ............................................................................................1, 8

Defendants ViacomCBS Inc. n/k/a Paramount Global ("Paramount Global"), Black Entertainment Television LLC d/b/a BET Networks ("BET"), and BET Productions IV, LLC ("BET IV" together with Paramount Global and BET, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 56, for summary judgment dismissing Plaintiff Walkie Check Productions, LLC's ("Plaintiff") sole remaining claim for copyright infringement.[1]

## PRELIMINARY STATEMENT

This action is premised on Plaintiff's erroneous belief that it has a copyright monopoly to the very *idea* of livestreaming musical performances via social media based on an undeveloped treatment for a "House Party" television series. Plaintiff's position lacks any basis in fact or law, and summary judgment should be entered for Defendants.

Unlike Plaintiff's treatment which describes a literal, "off the hook" "house party" in a Manhattan brownstone, replete with fancy partygoers and A-list celebrities, **none of the episodes in Defendants' *House Party* series involves a party of any kind**. In its prior decision dismissing all but Plaintiff's copyright infringement claim, the Court agreed that the elements Plaintiff claimed were allegedly copied by Defendants – the use of the common title "House Party"; use of the livestreaming medium; and the general use of a vertical camera orientation – were not subject to copyright protection. Because the parties did not have every episode of Defendants' series, however, Plaintiff was permitted to proceed with its copyright claim based on the "remote"

---

[1] By Opinion and Order entered on June 27, 2022 (DE 71), the Court dismissed Plaintiff's second and third causes of action, respectively, for "Breach of Implied Contract/*Quantum Meruit*" and "Unjust Enrichment." Thus, the only claim that remains is Plaintiff's first cause of action for "Copyright Infringement" asserted against all Defendants.

possibility that discovery would uncover an episode in Defendants' series bearing some similarity to Plaintiff's concept.

Discovery has now concluded with respect to the content of Defendants' series, and it revealed nothing to support Plaintiff's claim that the parties' works are substantially similar. Indeed, Plaintiff previously claimed in a sworn declaration that several episodes of Defendants' impromptu web series bore "particularly striking similarity" to its "House Party" treatment. But none of the 40 episodes that the parties have located is *remotely* similar to the concept described in Plaintiff's treatment, with the "similarities" between Plaintiff's treatment and Defendants' series extending, at most, to the broadcast of live music over social media.

Plaintiff faces a far greater bar at this stage of the action than it did on the pleadings; it is required to come forward with "significant, probative evidence" to substantiate its allegations of substantial similarity, *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467-68 (S.D.N.Y. 2011), and cannot defeat summary judgment "by relying on the allegations in [its] pleading or on conclusory statements." *Ward v. Barnes & Noble, Inc.*, 93 F. Supp. 3d 193, 200 (S.D.N.Y. 2015) (citation omitted). Plaintiff – who has had ample time to conduct discovery (with multiple extensions), and who has stipulated that no further discovery is necessary on this issue – cannot meet its burden here. Accordingly, summary judgment should be granted in Defendants' favor.

## STATEMENT OF FACTS[2]

### I.    THE PARTIES' WORKS

#### A.    Plaintiff's "House Party" Treatment

According to the Complaint, Plaintiff and non-party TAD2000, Inc. d/b/a Spin The Bottle are the co-creators and copyright co-owners of a treatment describing the format for a television series entitled, "House Party" (the "Treatment") – an "off-the-hook party" at a Manhattan brownstone featuring a hostess, crowds of partygoers, celebrity guests and musical performances – that was pitched along with a "one sheet" description to Defendants in 2015.  (SUMF ¶¶ 1, 4). The Treatment describes a twenty-minute episode following the hostess as she navigates her way through various rooms of this literal "house party"—described as "raucous," "packed to capacity," "insane" and filled with "madness" and – engages in conversation with celebrities and other guests, all while broadcasting a live-stream of the party to her followers on the (now-defunct) live streaming app Periscope.  (*Id*. ¶¶ 5-6).

The episode opens with the hostess speaking directly to the off-screen Periscope audience, telling them "where she is and what's going on" and showing them around the party.  (*Id*. ¶ 6). "We, as the TV audience, have arrived late."  (*Id*.).  Like the vast majority of videos on social media, the hostess shoots in "selfie-friendly vertical aspect ratio framing."  (*Id*.).  The opening scene is followed by a title sequence that uses a drone camera to capture the exterior of the house and the Empire State Building.  (*Id*.).  Back inside the house party, several celebrity guests make cameo appearances and different artists perform live music.  (*Id*. ¶ 7).  Each time a musical

---

[2] The facts relevant to this motion are set forth fully in Defendants' accompanying Local Rule 56.1 Statement of Undisputed Material Facts ("SUMF"), and are summarized herein for the Court's convenience.  Unless otherwise indicated, all citations to lettered exhibits herein refer to the exhibits attached to the Declaration of Wook Hwang ("Hwang Decl.") submitted herewith.

performance begins, the video feed switches from the hostess's vertical "selfie" angle to a "traditional HD horizontal-aspect ratio." (*Id*.).  In between music sets, the hostess, the artists, and the celebrity guests "engage in friendly flirty party chat," discussing topics such as celebrity gossip, the performances, and upcoming projects from the artists and celebrities.  (*Id*.).  As the hostess chats with her guests, a series of pop-up graphics appear on the screen delivering promotional factoids about the person she is speaking to, such as "facts about [the artist's] career, his latest project, [and] his album release date," and encouraging the audience to go online to hear additional songs by that artist.  (*Id*.).

Following the final musical performance, the episode cuts to the phone video of the hostess, who is in a state of "excitement" as she narrates what's happening inside the party.  (*Id*. ¶ 8).  The episode concludes with a virtual black "window shade" descending over the screen showing the end credits, which provide a Web address for additional pay-per-view viewing.  (*Id*.).  Though the party continues, the television audience's episode is over when the black shade reaches the bottom of the screen, at which point the audience's "'House Party' invitation has expired for now."  (*Id*.).

### B.      BET's Livestreamed House Party Series[3]

Other than the shared title, Defendants' *House Party* series is based on an entirely disparate concept in comparison to the literal "house party" experience described in Plaintiff's "House Party."  Launched in March 2020 at the outset of the COVID-19 pandemic, the BET *House Party* series is comprised of a diverse array of impromptu episodes that were intended to bring experiential engagement—the metaphorical "party"—to the audience's "house" as the world entered a phase of home quarantine (the "BET Series").  (SUMF ¶ 9).

---

[3] Defendants respectfully refer the Court to all of the available episodes compiled on the DVD submitted as Exhibit C to the accompanying Hwang Decl.  The summary that follows is for the Court's convenience only.

As this Court recognized in its Opinion on Defendants' motion to dismiss, there is no "consistent theme between episodes, as each livestream session has a different focus and feel, depending on the featured guest." (Opinion at 22); (*see id.* at 23 (noting the "diversity and inconsistency amongst the episodes of BET's [Series]")).  For example, the pilot episode released on March 29, 2020 centers on Christian gospel music and was intended to function as a virtual Sunday service.  (SUMF ¶ 10).  In addition, the episodes range from a few minutes long to over an hour depending on the nature of the content.  (*Id.* ¶ 11).  One episode, entitled, "BET House Party Presents: A Virtual Dance Tutorial with Queen Keke," for example, consists of a six-minute tutorial on a dance made popular on TikTok, whereas another episode entitled, "BET House Party Presents: Real Talk with Mastermind Connect," features an hour-long discussion focused entirely on mental health.  (*Id.*).  Many episodes feature discussions (with no musical performances) on topics as varied as COVID-19, race, politics, business advice, fashion and pop culture.  (*Id.* ¶ 12).  Others offer instructional exercise, yoga, cooking, and dance classes, again with no musical performances.  (*Id.*).  The format of each episode depends on the type of content presented.  (*Id.* ¶ 13).  For example, cooking and yoga tutorials are typically shot using a horizontal frame, whereas some videos that require showing an individual's full body are shot in a vertical orientation.  (*Id.*).

Far from conveying the look and feel of an actual house party, the hosts and guests on each episode of the BET Series are alone, typically in their homes.  (*Id.* ¶ 14).  A May 29, 2020 episode, for example, is hosted by Kailee Scales, the Managing Director at Black Lives Matter Global Network, and Deepak Chopra, a well-known alternative medicine advocate, each appearing by video from their homes and engaged in discussion on ways to deal with the stress caused by the pandemic, racial violence, and generational trauma faced by members of the Black community.  (*Id.*).  An October 22, 2020 episode features civil rights activist DeRay Mckesson, also appearing

from his home, discussing the then-upcoming presidential election and encouraging viewers to vote. (*Id*.).

Some episodes feature virtual "listening parties," "happy hours," and "Couchside Concerts" with live performances given by musicians and DJs. (*Id*. ¶ 15). None of these is remotely similar to the "raucous," "packed to capacity," and "insane" house party environment described in Plaintiff's Treatment (*id*. ¶ 5), nor was any episode filmed with sophisticated "HD multi-cam horizontal framing" as Plaintiff's concept was intended. (*Id*. ¶ 7). Rather, the episodes in the BET Series that feature live musical performances show only one artist for the entire duration of the segment, performing alone using their own devices and equipment. (*Id*. ¶ 15). Because the artist controls the video, there is no consistency in the format, camera orientation, video quality, or performance space (some artists choose to perform from their couches, others outdoors, and others in their recording studios). (*Id*.). In other words, the similarity in content for these episodes when compared to Plaintiff's concept begins and ends with the fact that live music is performed, as is true of innumerable other audiovisual works.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on or about February 10, 2021, asserting claims of "Copyright Infringement" (Direct, Contributory, and Vicarious), "Breach of Implied Contract/*Quantum Meruit*" and "Unjust Enrichment." (*See* DE 1, Complaint).

### A.   Defendants' Motion to Dismiss

On January 10, 2022, Defendants filed a motion to dismiss Plaintiff's claims in their entirety, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim. (DE 57-59). In opposition, Plaintiff claimed that the 86 episodes in the BET Series were substantially similar to the Treatment, and claimed that 36 of these episodes bore "a particularly striking similarity" with

Plaintiff's Treatment.  (SUMF ¶ 18).[4]  By Opinion and Order dated June 27, 2022, the Court dismissed all of Plaintiff's claims except the copyright claim.  (DE 71 ("Opinion") at 31-32).

The Court found that the elements of the Treatment that Plaintiff claimed were infringed were not subject to copyright protection in the first instance, including: (i) use of the common title, "House Party"; (ii) use of the livestreaming medium; (iii) the general use of a vertical camera orientation; and (iv) a "similar roster of performers" or "distribution schedule," which the copyrighted Treatment made no reference to in any event.  (Opinion at 19-20).  However, because the parties did not have copies of all episodes in the BET Series, the Court determined that it could not rule at the pleading stage, prior to completion of relevant discovery, that there is no substantial similarity between Plaintiff's Treatment and any of the episodes of the BET Series.  Prior to the completion of such discovery, the Court held that dismissal would be premature based on the "remote" possibility that one of the missing episodes livestreamed by Defendants might be substantially similar to Plaintiff's Treatment.  (*Id*. at 23-24).

### B.    The Parties Engage in Limited Discovery on Defendants' Livestreamed Episodes and Promotional Materials for the BET Series

At the parties' joint request, the Court bifurcated and limited fact discovery to securing the episodes and related marketing materials for Defendants' livestreamed BET Series.  (*See* DE 74 at ¶¶ 7, 20).  The parties exchanged all materials within their possession relevant to those contents and pursued non-party discovery to procure additional copies of recordings and promotional flyers.  (*See* DE 73, 75).  In particular, Plaintiff agreed to subpoena Meta Platforms, Inc. ("Meta"), the company that owns the Facebook and Instagram social media platforms on which Defendants livestreamed the BET Series, but then unexpectedly changed course.  (*See* DE 75 at 2 (Plaintiff

---

[4] As discussed in Section III. *infra*, Plaintiff is wrong.

citing to the Stored Communications Act as a prohibition to issue a subpoena on Meta)).

Defendants thus pursued a subpoena to Meta, which the Court issued on or about October 19,

2022.  (*See* DE 88-89).[5]  Nothing further was uncovered, however.

With the conclusion of this discovery, the parties now have located 40 total episodes,

including 11 episodes that Plaintiff previously claimed bore a "particularly striking similarity" to

Defendants' BET Series.[6]  (SUMF ¶ 18).  Plaintiff has agreed that no further discovery is necessary

to resolve the issue of substantial similarity.  (*See* Tr. at 27:2-5 MR ALDOUS: "On the summary

judgment aspect of it. We're not going to argue that . . . we need more discovery. We've got what

we've got at this point"; *see id*. at 29:16-18 "We will not argue that we need discovery on that

issue [*i.e.*, additional episodes], for purposes of opposing the summary judgment motion").

## **ARGUMENT**

## I.    **SUMMARY JUDGMENT LEGAL STANDARDS**

Summary judgment is mandated where there is no genuine issue of "material" fact, and

judgment can be entered as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury

could return a verdict for the non-moving party."  *Senno*, 812 F. Supp. 2d at 467 (citing *SCR Joint

Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might

affect the outcome of the litigation under the governing law, and disputes over irrelevant or

---

[5] Following the issuance of the Opinion dismissing all but Plaintiff's copyright infringement claim, the Court extended the fact discovery deadline at (one or more of) the parties' request on multiple occasions.  (*See* DE 75, 79, 93).  The most recent extension set the discovery end date to December 9, 2022.  (*See* DE 93 and 94).

[6] According to Plaintiff, discovery has revealed that the number of purportedly infringing episodes has risen from 36 to "[p]lus or minus 40, 45[.]"  (12/20/22 Transcript ("Tr.") at 4:14-15).  As of the filing of this motion, however, it is unclear how many episodes Plaintiff contends are violative of its Treatment.

unnecessary facts will not preclude the granting of summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009); *see also Celotex*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Trust Co.*, 93 F.3d 1064, 1072 (2d Cir. 1996) ("A defendant moving for summary judgment must prevail if the plaintiff fails to establish an essential element of its case.").

The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support each essential element of the claim or defense.  *See Celotex*, 477 U.S. at 324; *Semetex Corp. v. UBAF Arab Am. Bank*, 853 F. Supp. 759, 767 (S.D.N.Y. 1994), *aff'd*, 51 F.3d 13 (2d Cir. 1995).  "The nonmoving party cannot defeat summary judgment by 'simply showing that there is some metaphysical doubt as to the material facts,'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), or by "relying on the allegations in [its] pleading or on conclusory statements[.]"  *Ward v. Barnes & Noble, Inc.*, 93 F. Supp. 3d 193, 200 (S.D.N.Y. 2015) (citation omitted); *see Matsushita*, 475 U.S. at 586-87 (conclusory allegations or unsupported speculation is insufficient). Rather, the non-movant "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57).

II. **DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS THERE IS NO GENUINE ISSUE OF FACT WITH RESPECT TO SUBSTANTIAL SIMILARITY BETWEEN THE PARTIES' WORKS**

Plaintiff's copyright infringement claim should be dismissed because the purported "similarities" between the parties' works are common, generic elements, many of which are associated with livestreaming, and none of which are protectable as a matter of blackletter copyright law. Thus, even if Defendants had copied these unprotectable elements (which they did not), Plaintiff cannot make a *prima facie* showing of substantial similarity.

A. **Applicable Legal Standard**

To establish a claim of copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Abdin v. CBS Broad., Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). With respect to the second element, a plaintiff must prove not only that "the defendant has actually copied the plaintiff's work," but also that "the copying is *illegal* because a substantial similarity exists between the defendant's work and the *protectible* elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (emphasis added).

Given that Plaintiff's Treatment contains both protectable and unprotectable elements, this Court previously found the "more discerning" ordinary observer test applicable to determining substantial similarity. (Opinion at 21). Under that test, the Court "must attempt to extract the unprotectible elements from . . . consideration and ask whether the protectible elements, *standing alone*, are substantially similar" to the allegedly infringing work. *Peter F. Gaito*, 602 F.3d at 66 (citation omitted; emphasis added). Accordingly, "similarities between unprotectible elements in the disputed works may not contribute to a determination of substantial similarity." *Sheldon Abend Rev. Tr. v. Spielberg*, 748 F. Supp. 2d 200, 204 (S.D.N.Y. 2010). At the same time, the substantial

similarity test "does not . . . require the Court to ignore dissimilarities."  *Id*. at 205.  "[I]f the dissimilarities between two works *exceed* the similarities and the similar elements 'are – when compared to the original work – of small import . . . a finding of no infringement is appropriate.'" *Id*. at 205 (quoting *Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992) (emphasis added)).

With respect to unprotectable elements, "[i]t is 'a principle fundamental to copyright law' that 'a copyright does not protect an idea[.]'" *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) (citations omitted).  Under this long-standing idea/expression dichotomy, "the similarity between two works must concern the *expression* of ideas, not the ideas themselves."  *Peter F. Gaito*, 602 F.3d at 67 (emphasis added).  Also unprotectable are *scènes à faire*, which includes stock elements that are "indispensable, or at least standard, in the treatment of a given topic," *Zalewski v. Cicero Builder Dev. Inc*., 754 F.3d 95, 102 (2d Cir. 2014) (citation omitted), as well as elements that "flow naturally from [an] unprotectible premise[.]"  *Nobile v. Watts*, 747 F. App'x 879, 881 (2d Cir. 2018).  In effect, "the discerning observer test instructs that similarities attributable to unprotectible elements may as well not be similarities at all."  *Canal+ Image UK, Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 440 (S.D.N.Y. 2011).  "Neither does copyright protection extend to . . . 'stock' themes commonly linked to a particular genre."  *Walker v. Time Life Films, Inc*., 784 F.2d 44, 50 (2d Cir. 1986); *see also, e.g., Lapine v. Seinfeld*, No. 08 Civ. 128, 2009 U.S. Dist. LEXIS 82304, at *24-26 (S.D.N.Y. Sept. 10, 2009) ("Stock elements resulting from the initial choice of subject matter are not protectible."), *aff'd*, 375 F. App'x 81 (2d Cir. 2010).  After extracting such unprotectable elements, courts ask whether the "works as a whole [are] substantially similar," *Williams*, 84 F.3d at 590, by examining "similarities in such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting[.]"  *Id.* at 588.

Applying these standards, courts in this Circuit routinely dismiss copyright claims, both on

motions to dismiss and for summary judgment, where a comparison of the works at issue shows that the "similarity concerns non-protectable elements *or* no reasonable trier of fact could find the works substantially similar." *Crane v. Poetic Prods*., 593 F. Supp. 2d 585, 591 (S.D.N.Y. 2009) (internal quotation marks and citation omitted, emphasis added), *aff'd*, 351 F. App'x 516 (2d Cir. 2009); *Peter F. Gaito*, 602 F.3d at 63 (motion to dismiss copyright claim granted); *see also, e.g.*, *Shull v. TBTF Prods*., No. 20-3529, 2021 U.S. App. LEXIS 21220, at \*7 (2d Cir. July 19, 2021); *Montgomery v. NBC TV*, 833 F. App'x 361, 362 (2d Cir. 2020); *Abdin*, 971 F.3d at 66-67; *Green v. Harbach*, 750 F. App'x 57, 59 (2d Cir. 2019); *Nobile*, 747 F. App'x at 881; *Alexander v. Murdoch*, 502 F. App'x 107, 109 (2d Cir. 2012); *DiTocco v. Riordan*, 496 F. App'x 126 (2d Cir. 2012); *Kaye v. Cartoon Network, Inc.*, 297 F. Supp. 3d 362, 371-72 (S.D.N.Y. 2017); *Dickerson v. WB Studio Enters*., 276 F. Supp. 3d 167, 169 (S.D.N.Y. 2017); *Hayuk v. Starbucks Corp*., 157 F. Supp. 3d 285, 291-92 (S.D.N.Y. 2016); *Dean v. Cameron*, 53 F. Supp. 3d 641, 650-51 (S.D.N.Y. 2014); *Hallford v. Fox Entm't Grp., Inc*., No. 12 Civ. 1806 (WHP), 2013 U.S. Dist. LEXIS 19625, at \*19 (S.D.N.Y. Feb. 13, 2013); *Canal+ Image UK*, 773 F. Supp. 2d at 427; *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 655 (S.D.N.Y. 2011); *Latimore v. NBC Universal TV Studio*, 480 F. App'x 649, 651 (2d Cir. 2012) (affirming judgment granting defendants' summary judgment); *Willis v. HBO*, 57 F. App'x 902, 903 (2d Cir. 2003) (same); *Sheldon Abend Rev. Tr.*, 748 F. Supp. 2d at 210 (granting defendants' summary judgment); *Jones v. CBS, Inc.*, 733 F. Supp. 748, 749 (S.D.N.Y. 1990) (same); *Muller v. Twentieth Century Fox Film Corp*., 794 F. Supp. 2d 429, 441 (S.D.N.Y. 2011), *aff'd sub nom, Muller v. Anderson*, 501 F. App'x 81 (2d Cir. 2012) (same); *Rodriguez v. Heidi Klum Co., LLC*, No. 05 Civ. 10218 (LAP), 2008 U.S. Dist. LEXIS 80805, at \*10 (S.D.N.Y. Sept. 30, 2008) (same; no reasonable jury could find plaintiff's treatment and defendant's show substantially similar).

**B.    Discovery Has Confirmed That There is *No* Substantial Similarity Between the BET Series and the Protectable Elements of Plaintiff's Treatment**

In permitting Plaintiff's copyright claim to proceed, the Court acknowledged the "possibility – even if remote" that one of the episodes livestreamed by Defendants might be uncovered in discovery that would substantiate Plaintiff's allegations of substantial similarity. (Opinion at 23). Discovery, however, has foreclosed even this possibility, showing that there is nothing at all similar between Plaintiff's Treatment and any of the episodes in Defendants' series. As demonstrated below, any alleged similarities between the BET Series and Plaintiff's Treatment relates solely to unprotectable ideas and concepts. After removing these unprotectable concepts from consideration, it is clear that the works are substantially *dis*similar, and that no reasonable factfinder could find the works to be substantially similar.

**1.    There are No Protectable Similarities Between the BET Series and Plaintiff's Treatment**

Plaintiff previously summarized the purported similarities between its Treatment and the BET Series as follows:[7]

- **The series title "House Party" and/or episode titles**: Plaintiff's Treatment uses the "House Party" show title. (SUMF ¶ 16). In addition, the mere title of certain of Defendants' episodes, alone, evinces actionable copyright infringement. (Tr. at 5:5-6:6).

- **Show logo**: Plaintiff's Treatment utilized a logo consisting of "capitalized, sans serif" font. (SUMF ¶ 16).

- **Livestreaming from mobile devices**: Plaintiff's Treatment featured livestreaming from mobile devices POV, first from platforms like Periscope, and later evolved to encompass new applications such as Instagram Live and Facebook Live. (*Id.*).

---

[7] The similarities singled out by Plaintiff are taken from its Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint (DE 64) at pages 12-14.

- ***Real-Time interaction and distribution via social media***: Plaintiff's Treatment called for real-time interaction and distribution via social-media platforms.  (*Id*.).

- ***Organic and unscripted format***: Plaintiff's Treatment featured a "real-time, organic, and unscripted format."  (*Id*.).

- ***An invitation and "welcome" to the "party"***: Plaintiff's Treatment was designed to "invite a viewer *into* an experience (*i.e.*, a party), rather than bringing something *from* the livestream into the viewer's context."  (*Id*.).

- ***Use of framing in a vertical aspect ratio***: Plaintiff's Treatment featured talent "using a selfie-friendly vertical aspect ratio with a livestreaming POV."  (*Id*.).

- ***Switching to and from framing in a horizontal aspect ratio***: Plaintiff's Treatment, featured performance-based episodes shot in a horizontal-aspect ratio.  (*Id*.).

- ***Use of artists, labels, and representatives***: Plaintiff's Treatment featured talent selected from an array of artists, labels, and representatives.  (*Id*.).

- ***Intimate access***: Plaintiff's Treatment focused on intimate close-up shots, making the artists the focus, as opposed to the sets and staging.  (*Id*.).

None of these purported similarities – independently or in combination – are subject to copyright protection.

    <u>First</u>, the Court has already found the following elements to be unprotectable: (i) use of the common title, "House Party";[8]  (ii) use of the livestreaming medium; (iii) the general use of a

---

[8] The title "House Party" is unprotectable as a matter of law.  *See, e.g.*, *Walker v. Time Life Films, Inc*., 784 F.2d 44, 46 (2d Cir. 1986) (rejecting copyright claim alleging that defendants' screenplay for film "Fort Apache: The Bronx," "set in the same milieu as plaintiff's book," infringed plaintiff's "Fort Apache" work); *Reflex Media, Inc. v. Pilgrim Studios, Inc.*, No. CV 18-2260-GW(FFMx), 2018 U.S. Dist. LEXIS 220643, at *34-36 (C.D. Cal. Aug. 27, 2018) (same, where two series "have the same title: *Love at First Flight*," because "[t]itles are not protected by copyright law"); *McDonald v. West*, 138 F. Supp. 3d 448, 456 (S.D.N.Y. 2015) (same, where shared song title "Made in America" was "far too brief, common, and unoriginal to create any exclusive right vested in Plaintiff"); *Bell v. Blaze Magazine*, No. 99 CIV 12342 (RCC), 2001 U.S. Dist. LEXIS 2783, at *1 (S.D.N.Y. Mar. 15, 2001) (holding that copyright infringement claim could not be based upon similar titles *Hip Hop Behind Bars* and *Hip Hop Behind the Walls*); *Littel v. Twentieth Century Fox Film Corp*., No. 89 CIV 8526 (DLC), 1995 U.S. Dist. LEXIS 9340, at

vertical camera orientation;[9] and (iv) a "similar roster of performers" or "distribution schedule" given that the Treatment made no reference at all to any artists, labels, and/or representatives. (Opinion at 20; *see* Treatment).

Second, the use of sans serif font is not original to Plaintiff, nor protectable under copyright law. *See, e.g.*, *Ward*, 93 F. Supp. 3d at 202 (one cannot copyright "variations of typographic ornamentation, lettering, or coloring") (citing 37 C.F.R. § 202.1(a)); *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 132 (2d Cir. 2003) ("the public domain includes, for example, both the generic shape of the letter 'L' and all of the elaborately more specific 'L's' from the hundreds of years of font designs that have fallen into the public domain"); *Cisneros Design v. Bd. of Cnty. Comm'rs of Santa Fe*, No. 20-818 SCY/JHR, 2021 U.S. Dist. LEXIS 94707, at *21-22 (D.N.M. May 19, 2021) ("Plaintiff does not have a copyright on the sans serif font used in the images").

Third, switching to and from a sophisticated "HD multi-cam horizontal framing" as Plaintiff's concept was intended, does not even occur in the BET Series. And, even if it did, there is nothing original about using a "horizontal-aspect ratio" to film performance-based episodes. *See*, *e.g.*, *Fulks*, 207 F. Supp. 3d at 281 (rejecting copyright claim based, *inter alia*, on alleged "similarities in orientation and camera angle"). In fact, shooting scenes in such a manner flows

---

*34-35 (S.D.N.Y. July 6, 1995) (same, where movie series *Predator* allegedly infringed plaintiff's book *Predator*); *see also* (Opinion at 20) (citing cases). A search of the Internet Movie Database (IMDb) reveals 72 other works with the identical title "House Party" and 539 total works that use "house party" in their title. (SUMF ¶ 17; *see also* Hwang Decl. Exs. H and I). Indeed, not only are there myriad uses of the title "House Party" in content, but it was also the name of a now-defunct livestreaming application "Houseparty" which was aimed at facilitating "spontaneous" group chats of up to 8 users at a time. (*Id.* at Ex. J).

[9] The Court reasoned that use of the livestreaming medium, or the general use of a vertical camera orientation are "so general that they rise to the level of unprotected ideas." *See* (Opinion at 20) (citing *Fulks v. Knowles-Carter*, 207 F. Supp. 3d 274, 281 (S.D.N.Y. 2016)).

from the obvious aim of appropriately capturing the background of any particular scene. *See*, *e.g.*, *Nobile*, 747 F. App'x at 881 (elements that "flow naturally from [an] unprotectible premise" are unprotectable); *Rodriguez*, 2008 U.S. Dist. LEXIS 80805, at *15-16 ("features that necessarily result from the choice of a setting or situation do not enjoy copyright protection and are excluded from consideration") (citing *Walker*, 784 F.2d at 50); *Arden v. Columbia Pictures Indus., Inc*., 908 F. Supp. 1248, 1258 (S.D.N.Y. 1995)).

<u>Fourth</u>, to the extent that Plaintiff contends the Treatment was designed to "invite and/or welcome a viewer into an experience" or provide "intimate access" to the various artists performing at the "house party," these elements are unprotectable *scènes à faire* that flow from using a host in a private, unscripted setting. *See*, *e.g.*, *Willis v. HBO*, No. 00 Civ. 2500 (JSM), 2001 U.S. Dist. LEXIS 17887, at *13 (S.D.N.Y. Nov. 5, 2001) (explaining there is "nothing novel" about "a character who talks directly to the audience" and comparing the device to "Ancient Greek tragedy" which "employed a chorus that spoke to the audience"), *aff'd*, 57 F. App'x 902 (2d Cir. 2003); *Dillon v. NBCUniversal Media, LLC*, No. CV 12-09728 SJO (AJWx), 2013 U.S. Dist. LEXIS 100733, at *13-14 (C.D. Cal. June 18, 2013) (in the context of reality television programs, use of a host is a "generic" unprotectable element).  Furthermore, there is nothing novel about featuring celebrity guests or live musical performances in connection with a television series. *See Willis*, 2001 U.S. Dist. LEXIS 17887, at *13 (celebrities appearing as themselves in a series about a talent agent was neither surprising nor novel); *Guerilla Funk Recordings & Filmworks, LLC v. Hines*, No. CV11-03167 AHM (JCx), 2012 U.S. Dist. LEXIS 199904, at *8 (C.D. Cal. Apr. 18, 2012) (concerts by popular musicians are commonly used *scenes a faire* appearing in both scripted and unscripted shows).

Finally, Plaintiff's remaining claimed similarities – livestreaming from mobile devices; real-time interaction and distribution via social media; organic and unscripted format; an invitation and "welcome"; use of framing in a vertical aspect ratio; and intimate access – are all unprotectable ideas that flow from livestreaming, generally, and the applications that make livestreaming possible. The very reason users "go live" on Instagram or Facebook via mobile devices is to take advantage of the ability to interact in real-time on social media with followers. None of these elements is original to Plaintiff's Treatment. *See*, *e.g.*, *Abdin*, 971 F.3d at 66 (copyright claim requires "copying of constituent elements of [plaintiff's] work that are original") (citation omitted); *Williams v. A&E TV Networks*, 122 F. Supp. 3d 157, 163-64 (S.D.N.Y. 2015) (explaining that "creation of online 'buzz,' and online audience interaction or participation are all typical elements of a reality show's production and are not protectable")).

In short, Plaintiff cannot – and does not – hold exclusive rights to use Periscope, FaceTime, Instagram Live or Facebook Live, or any other method of livestreaming. *See*, *e.g.*, *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 284-86 (S.D.N.Y. 2001) ("[i]n no case does copyright protection . . . extend to any idea, **procedure, process, system, method of operation**, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work") (emphasis added); 17 U.S.C. § 102(b); *Tufenkian*, 338 F.3d at 132 n.4 ("even original expression goes unprotected insofar as it is 'necessary' to something unprotectible like an idea or a method or process").

### C. A Comparison of Total Concept and Feel Reveals Distinct and Entirely Dissimilar Works

Where, as here, there is no genuine issue of fact as to the differences in total concept and feel, theme, and setting between the parties' works, summary judgment is appropriate. *See Sheldon*, 748 F. Supp. 2d at 210 (granting defendant summary judgment where the total concept

and feel of work, *i.e.*, the way in which defendant "selected, coordinated and arranged the elements" was "markedly different" from plaintiff's work) (citation omitted); *Williams*, 84 F.3d at 589 (total concept and feel of works "differ[ed] substantially"); *see also Abdin*, 971 F.3d at 73 ("where the 'total concept and feel' of competing works is different, we will not find infringement") (citing *Tufenkian*, 338 F.3d at 134-35).

The concept, feel, theme, and setting of Plaintiff's Treatment revolves around a "raucous," "packed to capacity," "insane" house party filled with beautiful partygoers – the "who's who" of Manhattan's society – mingling with celebrities and artists.  (SUMF ¶ 5).  The raucousness of this setting and, indeed, the concept as a whole is amplified in the Treatment's descriptions of "sounds of a band playing and a raucous party underway," "crowd members pumping their fists and going crazy," and "tequila shots being thrown back at the bar[.]" (*Id.*).  Between the loud music, "sexy party guests," and "the eruption of cheering from the crowd," these images are meant to evoke an epic night out amongst A-listers in New York City.  (*Id.*).  Meant for a 12-episode, unscripted series (*id.* ¶ 1), Plaintiff's Treatment was intended to feature various (not yet known) musical artists and celebrity guests who "engage in friendly flirty party chat," discussing topics such as celebrity gossip, the performances, and upcoming projects from the artists and celebrities.  (*Id.* ¶ 7).

This literal "house party" has nothing in common with the BET Series, which was anchored in the goal of bringing varied forms of discourse and entertainment to the viewing audience's "house" soon after quarantining began in March 2020.  (*Id.* ¶ 9).  The show's tag line: "A Series Designed to Inspire, Entertain, and Empower Our Community" underscores the central premise of the series.  (*Id.*).  Yet as the Court previously noted, there is not "any consistent theme between episodes" – each "has a different focus and feel, depending on the featured guest" and, depending

on the nature of the content, range from a few minutes long to over an hour.  (Opinion at 22; SUMF ¶ 11).  Discussion topics run the gamut, from COVID-19, mental health, race, politics, and business advice to virtual classes for exercise, cooking and dancing.  (SUMF ¶ 12).  Thus, when considering the BET Series *in toto*, the "total concept and feel" has *no* similarity to Plaintiff's Treatment whatsoever.  And, when considering the individual episodes, the similarities in concept and feel go no further than the fact that live music is featured in Plaintiff's Treatment and a number of episodes in Defendants' BET Series, as is true of every other live musical performance that has ever been broadcast.

In sum, the total concept and feel, theme, pace, setting—and, indeed, fundamental premise—of the parties' works are completely *dis*similar, as a matter of law.  *See, e.g., Abdin*, 971 F.3d at 69 ("[a]s a matter of logic as well as law, the more numerous the differences between two works the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated from the other") (citation omitted); *Hayuk*, 157 F. Supp. 3d at 292 (courts in this District, "in applying the substantial similarity test, have found certain similarities to exist as to portions of an allegedly infringing work, but nonetheless held that substantial similarity did not exist because of overwhelming dissimilarities in the works when compared in 'total concept and overall feel'") (citation omitted).  Because there is no similarity of protectable expression between Plaintiff's Treatment and the BET Series, Defendants' motion should be granted.[10]

---

[10] Summary disposition of Plaintiff's claims for copyright infringement necessarily results in summary judgment as to Plaintiff's claims for contributory and vicarious infringement.  *See A&E TV Networks*, 122 F. Supp. 3d at 165 ("there can be no contributory infringement absent actual infringement . . . and no vicarious infringement absent direct infringement") (citing *Faulkner v. Nat'l Geographic Enters., Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) (internal quotations and brackets omitted)).

### III.    PLAINTIFF HAS NO EVIDENCE TO SUPPORT ITS THEORY THAT DEFENDANTS' SERIES IS SUBSTANTIALLY SIMILAR IN PROTECTABLE ELEMENTS TO PLAINTIFF'S TREATMENT

Given Defendants' showing of entitlement to judgment as a matter of law, the burden shifts to Plaintiff to come forward with admissible evidence sufficient to support each essential element of its copyright claim. *See Celotex*, 477 U.S. at 324; *Semetex*, 853 F. Supp. at 767; *Ward*, 93 F. Supp. 3d at 200 (nonmovant cannot rely on solely on the allegations in its pleading or on conclusory statements to survive summary judgment); *see also Contemporary Mission v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981) ("a plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover"). Here, Plaintiff does not have *any* evidence to substantiate its claim that Defendants' BET Series is substantially similar in protectable elements to Plaintiff's Treatment.

The very episodes in the BET Series that Plaintiff has claimed (via sworn declaration) bear "a particularly striking similarity" to Plaintiff's Treatment underscore the utter lack of merit to Plaintiff's claim.[11]  (SUMF ¶ 18).  A review of each of the available episodes unquestionably demonstrates that the episodes Plaintiff has singled out contain *no* similarities in protectable expression to the Treatment (*id.* ¶ 19):

- CHEF VELVET – LIVE FROM KITCHEN – 4/22/20 – 1 PM: features celebrity Chef Velvet cooking vegan food from an industrial kitchen over the course of the 11-minute livestreamed episode.

- MARIO W/ DJ VICIOUS – COUCHSIDE CONCERT – 5/8/20 5 PM: features R&B singer, Mario, singing and riffing along with live music played by DJ Vicious. The two appear in a split screen for the viewing audience but are respectively

---

[11] Plaintiff previously identified these episodes in paragraph 9 of the Declaration of Steven Lebowitz in Opposition to Defendants' Motion to Dismiss and its accompanying Exhibit 3, all of which are annexed as Exhibit G to the Hwang Decl.  Plaintiff's naming conventions and all capitals are used herein for ease of reference.

livestreaming from their own homes over the course of the 45-minute livestreamed episode.

- ANGELA YEE + DONNELL RAWLINGS – REAL TALK – PUSHED FROM 5/11/20 – 1PM TO 8/3/20: features radio personality, Angela Yee, and comedian, Donnell Rawlings, discussing their efforts to perform outdoors for live audiences while observing COVID-19 protocols, and engaging in Q&A from pre-selected fan submissions.  The two appear in a split screen for the viewing audience but are respectively livestreaming from their own homes over the course of the 48-minute livestreamed episode.

- ADÉ – BLACK MUSIC MONTH – 6/8/20: features singer, Adé, performing new music from his project entitled "wyd after?" for Black Music Month.  Adé appears live from a studio over the course of the 12-minute livestreamed episode.

- INDIA SHAWN – 6/10/20: features singer and songwriter, India Shawn, performing songs from her various albums for Black Music Month.  India appears live from a nondescript location over the course of the 11-minute livestreamed episode.

- SAMMIE – COUCHSIDE CONCERT – 6/12/20: features singer, Sammie, performing new works for Black Music Month.  Sammie appears from a nondescript location over the course of the 10-minute livestreamed episode.

- MUMU FRESH – COUCHSIDE CONCERT – 6/17/20: features singer, Maimouna Youssef, known as Mumu Fresh, performing her original works for Black Music Month.  Mumu Fresh appears from her couch over the course of the 15-minute livestreamed episode.[12]

- ROTIMI – COUCHSIDE CONCERT – 6/19/20: features actor and singer, Rotimi, performing for Black Music Month.  Rotimi appears from his home over the course of the nearly 10-minute livestreamed episode.

- BOSCO – BLACK MUSIC MONTH – 6/22/20: features musical artist, Bosco, performing her new works for Black Music Month.  Bosco appears from an outdoor, backyard area accompanied by a band, over the course of the 6-minute livestreamed episode.

- RAHEEM DEVAUGHN – COUCHSIDE CONCERT – 11/20/20 – 3 PM: features three-time Grammy nominated musician, Raheem DeVaughn, performing live.  Raheem appears from a studio over the course of the 4-minute livestreamed episode.

---

[12] Plaintiff incorrectly notes that this episode was posted on June 17, 2020 instead of June 18, 2020.  (SUMF ¶ 19 n.1).

- THE LEGENDARY CHRIS WASHINGTON – INAUGURATION – 1/20/21 –
  2 PM: features DJ Chris Washington playing and mixing music live for The Virtual
  Inaugural After Party, following President Joe Biden and Vice President Kamala
  Harris' inauguration.  The legendary DJ appears from a home studio over the course
  of the nearly 16-minute livestreamed episode which is co-sponsored by BET and
  Howard University.

*None* of these purportedly "strikingly similar" episodes depicts a party, let alone the "raucous,"
"packed to capacity," "insane" party filled with "madness" described in the Treatment.  (*Id*. ¶ 5).
The only imaginable resemblance lies in the fact that every episode (aside from "Real Talk with
Angela Yee & Donnell Rawlings") features music and live performances, underscoring the absurd
premise of Plaintiff's copyright claim – that it holds a copyright monopoly to the *idea* of displaying
live music on social media.  Plaintiff, obviously, is wrong.  *See*, *e.g.*, *Guerilla Funk*, 2012 U.S.
Dist. LEXIS 199904, at *8 (in context of scripted and unscripted shows there is nothing protectable
about live musical performances); *Vacchi v. E\*Trade Fin. Corp*., No. 19cv3505 (DLC), 2019 U.S.
Dist. LEXIS 156972, at *3-4 (S.D.N.Y. Sept. 13, 2019) (copyright claim dismissed where both
works featured people dancing to music).

Nor can Plaintiff rely on the notion that some other episode out there may bear some
*hypothetical* or *remote* similarity to its Treatment.  *See*, *e.g.*, *Latimore,* 480 F. App'x at 651
(summary judgment properly granted where, "after protracted discovery, [plaintiff] utterly failed
to uncover evidence" to support her copyright claim); *Papazian v. Sony Entm't*, No. 16-cv-07911
(RJS), 2017 U.S. Dist. LEXIS 164217, at *19 (S.D.N.Y. Sept. 28, 2017) (refusing to permit
plaintiff "to engage in a 'fishing expedition' in the hope that he could come up with some tenable
cause of action" to oppose summary judgment); *Paddington Partners v. Bouchard*, 34 F.3d 1132,
1138 (2d Cir. 1994) (a "party's mere hope that further evidence may develop prior to trial is an
insufficient basis upon which to justify the denial of a summary judgment motion") (internal
quotation, brackets and citation omitted).  The parties have exhausted discovery on this issue.

Based on the universe of evidence, there is no question that Plaintiff cannot satisfy its summary judgment burden and maintain its sole remaining claim.

## **CONCLUSION**

For each of the foregoing reasons, Defendants respectfully request that the Court grant summary judgment in their favor and dismiss Plaintiff's sole claim for copyright infringement.

Dated: February 10, 2023
New York, New York

LOEB & LOEB LLP

By: _/s/ Wook Hwang_
Wook Hwang
Mary Jean Kim
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

*Attorneys for Defendants ViacomCBS Inc.*
*n/k/a Paramount Global, Black Entertainment*
*Television LLC d/b/a BET Networks and BET*
*Productions IV, LLC*

23465329