UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| WALKIE CHECK PRODUCTIONS, LLC,<br><br>                        Plaintiff,<br><br>         - against -<br><br>VIACOMCBS INC., BLACK ENTERTAINMENT TELEVISION LLC d/b/a BET NETWORKS, and BET PRODUCTIONS IV, LLC,<br><br>                      Defendants. | Case No. 1:21-cv-01214-KPF |

### PLAINTIFF'S LOCAL CIVIL RULE 56.1 RESPONSE
### TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

Pursuant to Local Civil Rule 56.1(b) of the Local Rules of the United States District Court for the Southern District of New York, Plaintiff Walkie Check Productions, LLC ("Walkie Check" or "Plaintiff") respectfully submits: (i) responses to the statement of material facts ("SUF") by Defendants ViacomCBS Inc., Black Entertainment Television LLC d/b/a BET Networks, and BET Productions IV, LLC (collectively, "Defendants"); and (ii) Walkie Check's counter-statement of disputed material facts.

As set forth below, there are a number of genuine issues of disputed material facts, requiring resolution at trial.[1]

---

[1] Capitalized terms set forth herein have the same meaning as those set forth in Walkie Check's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Spoliation Sanctions, dated March 24, 2023 ("Opposition Brief"). In addition, in this Response and Counter-Statement and the accompanying Opposition Brief, all "Exh." references, marked by numbers (*e.g.*, 1, 2, 3), are made to the Aldous, Borg, or Lebowitz Declarations and all "Exh." references, marked by letters (*e.g.*, A, B, C), are made to the Declaration of Wook Hwang, dated February 10, 2023.

1

**WALKIE CHECK'S RESPONSES TO
DEFENDANTS' STATEMENT OF MATERIAL FACTS[2]**

1.  Plaintiff Walkie Check Productions, LLC ("Plaintiff") is the copyright co-owner and co-creator of a treatment describing the format for a 12-episode, unscripted television series entitled, "House Party" (the "Treatment"), which was pitched along with a "one-sheet" description to Defendants in 2015.  (Complaint (DE 1) ("Cmplt.") ¶¶ 19, 26; Hwang Decl., Exs. A (One-Sheet) and B (Treatment)).

*Plaintiff's Response*:  Denied, to the extent that this paragraph calls for legal and factual conclusions regarding the relationship between Plaintiff and non-party TAD2000, Inc. d/b/a Spin The Bottle.  Furthermore, reference to the "format for a 12-episode, unscripted television series entitled, "House Party" (the "Treatment"), which was pitched along with a "one-sheet" description to Defendants in 2015" unduly limits the time frame regarding the nature and extent of Plaintiff's interactions, negotiations, and discussions with Defendants and which occurred over years, (*e.g.*, Declaration of Steven Lebowitz in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Spoliation Sanctions ("Lebowitz Opp. Decl.") at ¶¶ 4-15, Exhs. 11-18), therefore raising material issues of fact regarding the extent of Plaintiff's asserted pitching to Defendants, the materials included therein and the understanding of Plaintiff and Defendant as to what was encompassed in any such pitch.

Walkie Check also objects to this paragraph to the extent:  (i) it fails to comply with the requirement, in Section 5(C)(ii) of the Court's Individual Rules of Practice in Civil Cases (revised:  March 2, 2021) (the "Rules"), that "each numbered paragraph . . . contain only one

---

[2]  To the extent responses to the headings in Defendants' SUF are required, Walkie Check denies any and all alleged undisputed facts that may be set forth in those headings.

2

factual assertion;" and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

2.  Defendant Paramount Global is a global media and entertainment company. (Answer (DE 72) ¶ 6).

*Plaintiff's Response*:  Admitted.

3.  Defendants BET and BET IV are indirect subsidiaries of Paramount Global. (*Id*.). BET is a leading provider of premium entertainment, music, news, digital and public affairs content for Black audiences. (*Id*. ¶ 7).

*Plaintiff's Response*:  Admitted, except Walkie Check objects to this paragraph to the extent it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion." (Rules at § 5(C)(ii).)

4.  The Treatment, which was co-created by Plaintiff and non-party TAD2000, Inc. d/b/a Spin The Bottle, describes an "off-the-hook party" at a Manhattan brownstone featuring a hostess, crowds of partygoers, celebrity guests and musical performances. (Cmplt. ¶¶ 13, 19, 26; Hwang Decl. ¶ 4, Ex. B at ¶ A4)).

*Plaintiff's Response*:  Denied, to the extent that this paragraph calls for legal and factual conclusions regarding the relationship between Plaintiff and non-party TAD2000, Inc. d/b/a Spin The Bottle.  Furthermore, the Treatment itself describes much more than an "off-the-hook party" at a Manhattan brownstone featuring a hostess, crowds of partygoers, celebrity guests and musical performances. (*E.g.,* Declaration of Wook Hwang ("Hwang Decl.") Exh. B.)  In addition, this statement raises material issues of fact as the interpretation of the Treatment must be done alongside the One-Sheet that accompanied it, and within the context of the years of discussions between Plaintiff and Defendant, and the subsequent editorial revisions, annotations,

elaborations, and other modifications to this document, the collection of which constitutes Walkie Check's "House Party" Creation. (*E.g.*, *id.* Exh. A; Lebowitz Opp. Decl. at ¶¶ 4-15, Exhs. 11-18.)

Walkie Check also objects to this paragraph to the extent: (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

5.  The Treatment describes a twenty-minute episode following the hostess as she navigates her way through various rooms of this literal "house party"—described as "raucous," "packed to capacity," "insane" and filled with "madness" and beautiful partygoers – the "who's who" of Manhattan's society. (*Id*. ¶¶ A1, A2, A4, D1, D2, D4). The raucousness of this setting and the concept as a whole is amplified in the Treatment's descriptions of "sounds of a band playing and a raucous party already underway" (*id.* ¶ A1), "crowd members pumping their fists and going crazy" (*id*. ¶ A5), and "tequila shots being thrown back at the bar[.]" (*id.* ¶ B4). Between the loud music, "sexy party guests," (*id.* ¶ A7) and "the eruption of cheering from the crowd," (*id.* ¶ C1) these images are meant to evoke an epic night out amongst A-listers in New York City. (*Id*. ¶ 3, Ex. A at 1).

***Plaintiff's Response***: Denied, as the Treatment itself describes much more than the above. (*E.g.*, Hwang Decl. Exh. B.) Further, this statement raises genuine issues of material fact as the interpretation of the referenced document must be done alongside the One-Sheet that accompanied it, and within the context of the years of discussions between Plaintiff and Defendants, and the subsequent editorial revisions, annotations, elaborations, and other

4

modifications to this document, the collection of which constitutes Walkie Check's "House Party" Creation. (*E.g.*, *id.* Exh. A; Lebowitz Opp. Decl. at ¶¶ 4-15, Exhs. 11-18.)

Walkie Check also objects to this paragraph to the extent: (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

6. The episode opens with the hostess speaking directly to the off-screen Periscope audience, telling them "where she is and what's going on" and showing them around the exclusive affair. (*Id*. ¶¶ A1, A3). "We, as the TV audience, have arrived late." (*Id*. ¶ A1). Like the vast majority of videos on social media, the hostess shoots in "selfie-friendly vertical aspect ratio framing." (*Id*.). The opening scene is followed by a title sequence that uses a drone camera to capture the exterior of the brownstone with loft-style windows "peeking in on the party inside," and then pans to show the Empire State Building. (*Id*. ¶ A2).

***Plaintiff's Response***: Denied, as the Treatment itself describes much more than the above. (*E.g.*, Hwang Decl., Exh. B.) Further, this statement raises genuine issues of material fact as the interpretation of the referenced document must be done alongside the One-Sheet that accompanied it, and within the context of the years of discussions between Plaintiff and Defendant, and the subsequent editorial revisions, annotations, elaborations, and other modifications to this document, the collection of which constitutes Walkie Check's "House Party" Creation. (*E.g.*, *id.*, Exh. A; Lebowitz Opp. Decl. at ¶¶ 4-15, Exhs. 11-18.)

Walkie Check also objects to this paragraph to the extent: (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at §

5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

7.      Back inside the house party, several celebrity guests make cameo appearances and different artists perform live music.  (*Id*. ¶¶ A5, B4, B5, C3-C6).  Each time a musical performance begins, the video feed switches from the hostess's vertical "selfie" angle to a more sophisticated "HD multi-cam horizontal framing[.]"  (*Id*. ¶¶ A5, B3, C5, D3).  In between music sets, the hostess, the artists, and the celebrity guests "engage in friendly flirty party chat," discussing topics such as celebrity gossip, the performances, and upcoming projects from the artists and celebrities.  (*Id*. ¶¶ A6, A7, C3).  As the hostess chats with her guests, a series of pop-up graphics appear on the screen delivering promotional factoids about the person she is speaking to, such as "facts about [the artist's] career, his latest project, [and] his album release date," and encouraging the audience to go online to hear additional songs by that artist.  (*Id*. ¶¶ A5, A6, B2, D2).

*Plaintiff's Response*:  Denied, as the Treatment itself describes much more than the above.  (*E.g.*, Hwang Decl., Exh. B.)  Further, this statement raises material issues of fact as the interpretation of the referenced document must be done alongside the One-Sheet that accompanied it, and within the context of the years of discussions between Plaintiff and Defendant, and the subsequent editorial revisions, annotations, elaborations, and other modifications to this document, the collection of which constitutes Walkie Check's "House Party" Creation.  (*E.g.*, *id.*, Exh. A; Lebowitz Opp. Decl. at ¶¶ 4-15, Exhs. 11-18.)

Walkie Check also objects to this paragraph to the extent:  (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at §

6

5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

8.     Following the final musical performance, the episode cuts to the phone video of the hostess, who is in a state of "excitement" as she narrates what's happening inside the party. (*Id*. ¶ D4). The episode concludes with a virtual black "window shade" descending over the screen showing the end credits, which provide a Web address for additional pay-per-view viewing. (*Id*.). Though the party continues, the television audience's episode is over when the black shade reaches the bottom of the screen, at which point the audience's "'House Party' invitation has expired for now." (*Id*.).

***Plaintiff's Response***:  Denied, as the Treatment itself describes much more than the above. (*E.g.*, Hwang Decl., Exh. B.)  Further, this statement raises material issues of fact as the interpretation of the referenced document must be done alongside the One-Sheet that accompanied it, and within the context of the years of discussions between Plaintiff and Defendant, and the subsequent editorial revisions, annotations, elaborations, and other modifications to this document, the collection of which constitutes Walkie Check's "House Party" Creation. (*E.g.*, *id.*, Exh. A; Lebowitz Opp. Decl. at ¶¶ 4-15, Exhs. 11-18.)

Walkie Check also objects to this paragraph to the extent:  (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

9.     Defendants, in March 2020 at the outset of the COVID-19 pandemic, launched the BET *House Party* series comprised of a diverse array of impromptu episodes that were intended to bring experiential engagement—the metaphorical "party"—to the audience's

7

"house" as the world entered a phase of home quarantine (the "BET Series"). (*See* Cmplt. ¶¶ 3; *see also* Hwang Decl. ¶ 5, Ex. C (Available Episodes); *id*. ¶ 6, Ex. D (Promotional Flyers), *id*. ¶ 7, Ex. E (One-sheets)). The BET Series tag line is: "A Series Designed to Inspire, Entertain, and Empower Our Community." (*Id*. ¶ 8, Ex. F.).

  ***Plaintiff's Response***: Admitted, to the extent the statement is limited to the date that BET launched its House Party series, but denied as to the rest of the statement which raises a genuine issue of material fact as the remainder of the statement contains a series of opinions purporting to describe the series but which do not reflect the fact that BET's House Party series was based nearly entirely on Walkie Check's "House Party" Creation, misappropriating its concept, style, look and feel, distribution channels, and various other elements which were knowingly taken from Plaintiff. (*E.g.*, Hwang Decl. Exhs. A, B; Lebowitz Opp. Decl. at ¶¶ 16-30, Exhs. 19-23). Further, the description in this statement raises a genuine issue of material fact as to the intent of BET when creating the series and which is contradicted by the countless, emails, discussions, and meetings that were held between Walkie Check and BET in which BET expressed its intention to partner with Walkie Check and create a series which allowed a viewer to obtain "a "privileged peek" of the secret "lair[s]" of their favorite artists and "take in private performances" and interact with them (and each other) in real time. (*E.g.,* Hwang Decl., Exh. A, Lebowitz Opp. Decl. at ¶ 5).

  Walkie Check also objects to this paragraph to the extent: (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

8

10. Defendants' BET Series premiered its pilot episode, on March 29, 2020, which centered on Christian gospel music and was intended to function as a virtual Sunday service. (Hwang Decl., Ex. D at 1). The final episode streamed on January 20, 2021. (*Id.* at 43).

***Plaintiff's Response***: Admitted, to the extent that the statement is limited to the date that BET premiered its pilot episode, but denied as to the rest of the statement which raises a genuine issue of material fact as the remainder of the statement contains a series of opinions purporting to describe the episode but which do not reflect the fact that BET's House Party series (and by definition this episode) was based nearly entirely on Walkie Check's "House Party" Creation, misappropriating its concept, style, look and feel, distribution channels, and various other elements which were knowingly taken from Plaintiff. (*E.g.*, Hwang Decl. Exhs. A, B; Lebowitz Opp. Decl. at ¶¶ 16-30, Exhs. 19-23). Further, the description in this statement raises a genuine issue of material fact as to the intent of BET when creating this particular episode and which is contradicted by the countless, emails, discussions, and meetings that were held between Walkie Check and BET in which BET expressed its intention to partner with Walkie Check and create a series (and by definition this episode) which allowed a viewer to obtain "a "privileged peek" of the secret "lair[s]" of their favorite artists (not limited to any genre and certainly including gospel musical artists) and "take in private performances" and interact with them (and each other) in real time. (E.g., Hwang Decl., Exh. A, Lebowitz Opp. Decl. at ¶ 5).

Walkie Check also objects to this paragraph to the extent: (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

11.     There is not "any consistent theme between episodes" and each "has a different focus and feel, depending on the featured guest." (DE 71 (Opinion) at 22). Depending on the nature of the content, the episodes range from a few minutes long to over an hour. (*See generally* Hwang Decl., Ex. C). One episode, entitled, "BET House Party Presents: A Virtual Dance Tutorial with Queen Keke," for example, consists of a six-minute tutorial on a dance made popular on TikTok, (*see id*. at Ex. C (Episode No. 6)) whereas another episode entitled, "BET House Party Presents: Real Talk with Mastermind Connect," features an hour-long discussion focused entirely on mental health. (*See id*. (Episode No. 13)).

*Plaintiff's Response*: Denied, and raising a genuine issue of material fact as there are countless common themes between each episode including that each and every episode was: (1) live streamed, shot using either horizontal or vertical aspect ratio, (2) shot in a small venue such as a studio, home, or similar such setting, (3) unscripted in nature; (4) distributed via social media as opposed to linear platforms; and (5) allowed viewers wherever located to interact either with each other or online and often the artist; these elements combining in a unique and novel manner as expressed in Walkie Check's "House Party" Creation to provide intimate access to each artist. (*E.g.*, Hwang Decl., Exh. C, Lebowitz Opp. Decl. at ¶¶ 16-30, Exh. 20). Moreover, entire groups of episodes had similar themes and were labeled collectively as "Couchside Concerts," "Happy Hours," "Listening Parties," "Virtual Celebrations," and/or "Virtual After Parties," each of which is substantially similar to Walkie Check's unique and novel "House Party" Creation. (*Id.* at ¶ 29).

Walkie Check also objects to this paragraph to the extent: (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at §

5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

12. Many episodes feature discussions (with no musical performances) on topics as varied as COVID-19, mental health, race, politics, business advice, fashion and pop culture. (*See e.g.*, *id*. (Episode Nos. 11, 12, 15, 24, and 35)). Others offer instructional exercise, yoga, cooking, and dance classes, again with no musical performances. (*See e.g.*, *id*. (Episode Nos. 1, 2, 7, 30, 32, and 33)).

*Plaintiff's Response*: Denied, and raising a genuine issue of material fact as Defendants only preserved a minority of the at least 90 episodes that were distributed, thereby failing to allow any quantification of what might constitute "many." (*E.g.*, Hwang Decl. at ¶ 5 (conceding that "b]ecause many of the[ir] episodes were not recorded when they were livestreamed, they are no longer available); Lebowitz Decl. Exh. 19). What's more, Plaintiff has identified at least 39 episodes that are labeled collectively as "Couchside Concerts," "Happy Hours," "Listening Parties," "Virtual Celebrations," and/or "Virtual After Parties," representing nearly 50% of the episodes that are known to have been distributed and that are substantially similar to Walkie Check's unique and novel "House Party" Creation. (*E.g., id.*).

Walkie Check also objects to this paragraph to the extent: (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

13. The format of each episode depends on the type of content presented. For example, cooking and yoga tutorials are typically shot using a horizontal frame, whereas some videos that require showing an individual's full body are shot in a vertical orientation.

*Plaintiff's Response*:  Denied, and raising a genuine issue of material fact as the format of each episode constitutes much more than shot framing.  Further, this paragraph raises a genuine issue of material fact because every episode in the series which has been preserved in some form shares common elements and themes including but not limited, to that each was: (1) live streamed, (2) shot in a small venue such as a studio, home, or similar such setting, (3) unscripted in nature; (4) distributed via social media as opposed to linear platforms; and (5) allowed viewers wherever located to interact either with each other or online; these elements combining in a unique and novel manner as expressed in Walkie Check's "House Party" Creation to provide intimate access to each guest.  (*E.g.*, Hwang Decl., Exh. C, Lebowitz Opp. Decl. at ¶¶ 16-30, Exh. 20).

Walkie Check also objects to this paragraph to the extent:  (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

14.     The hosts and guests on each episode of the BET Series typically appear alone, in their homes.  A May 29, 2020 episode, for example, is hosted by Kailee Scales, the Managing Director at Black Lives Matter Global Network, and Deepak Chopra, a well-known alternative medicine advocate, each appearing by video from their homes and engaged in discussion on ways to deal with the stress caused by the pandemic, racial violence, and generational trauma faced by members of the Black community.  (*See id*. (Episode No. 12)).  An October 22, 2020 episode features civil rights activist DeRay Mckesson, also appearing from his home, discussing the then-upcoming presidential election and encouraging viewers to vote.  (*See id*. (Episode No. 35)).

*Plaintiff's Response*:  Denied, and raising a genuine issue of material fact as Defendants only preserved a minority of the at least 90 episodes that were distributed, thereby failing to allow any quantification of what might constitute "typical"  (*E.g.*, Hwang Decl. at ¶ 5 (conceding that "b]ecause many of the[ir] episodes were not recorded when they were livestreamed, they are no longer available); Lebowitz Decl. Exh. 19).  What's more, Plaintiff has identified at least 39 episodes that are labeled collectively as "Couchside Concerts," "Happy Hours," "Listening Parties," "Virtual Celebrations," and/or "Virtual After Parties," representing nearly 50% of the episodes that are known to have been distributed and that are substantially similar to Walkie Check's unique and novel "House Party" Creation.  (*E.g., id.*).

Walkie Check also objects to this paragraph to the extent:  (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

15.   Some episodes feature virtual "listening parties," "happy hours," and "Couchside Concerts" with live performances given by musicians and DJs.  (*See e.g., id*. (Episode Nos. 8, 18, 21, 28)).  These live musical performances show only one artist for the entire duration of the segment, performing alone using their own devices and equipment.  (*See e.g., id*. (Episode Nos. 19, 20, 34, 36, 39)).  Because the artist controls the video, there is no consistency in the format, camera orientation, video quality, or performance space (some artists choose to perform from their couches, others outdoors, and others in their recording studios).

*Plaintiff's Response*:  Denied, and raising a genuine issue of material fact as Defendants only preserved a minority of the at least 90 episodes that were distributed, thereby failing to allow any generalizations to be made about how live musical performances were staged, shot,

13

performed, and/or the number of artists therein.  (*E.g.*, Hwang Decl. at ¶ 5 (conceding that "b]ecause many of the[ir] episodes were not recorded when they were livestreamed, they are no longer available); Lebowitz Decl. Exh. 19).  Moreover, this paragraph raises genuine issues of material fact as Walkie Check has reviewed and provided the Court a number of such episodes demonstrating that they were all: (1) live streamed, shot using either horizontal or vertical aspect ratio, (2) shot in a small venue such as a studio, home, or similar such setting, (3) unscripted in nature; (4) distributed via social media as opposed to linear platforms; and (5) allowed viewers wherever located to interact either with each other or online; these elements combining in a unique and novel manner as expressed in Walkie Check's "House Party" Creation to provide intimate access to each guest.  (*E.g.*, Hwang Decl., Exh. C, Lebowitz Opp. Decl. at ¶¶ 16-30, Exh. 20).  In addition, this paragraph raises genuine material issues of fact because many of these episodes contained more than one artist accompanying and/or performing alongside the headline artist.  (*E.g.*, *Id.* ¶¶ 16-30, Exh. 20).

Walkie Check also objects to this paragraph to the extent:  (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

16. In its Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint (DE 64 at 12-14 ("Def. Opp. Br.")), Plaintiff previously summarized the purported similarities between its Treatment and the BET Series as follows:

- ***The series title "House Party" and/or episode titles***: Plaintiff's Treatment uses the "House Party" show title.  (Cmplt. ¶¶ 3, 15, 76; Hwang Decl. ¶ 11, Ex. I (Declaration of Steven Lebowitz in Opposition to Defendants' Motion to Dismiss [hereinafter, "Lebowitz Decl."] ¶ 6, Ex. 1)).  In addition, the mere title of certain of Defendants' episodes, alone, apparently evinces actionable copyright infringement.  (DE 96, Tr. at 5:5-6:6).

- ***Show logo***: Plaintiff's Treatment utilized a logo consisting of "capitalized, sans serif" font. (Lebowitz Decl. ¶ 6, Ex. 1).

- ***Livestreaming from mobile devices***: Plaintiff's Treatment featured livestreaming from mobile devices POV, first from platforms like Periscope, and later evolved to encompass new applications such as Instagram Live and Facebook Live. (*Id.* ¶¶ 4-6, Exs. 1-2; Hwang Decl. Ex. B at ¶¶ A3-A5, C3, D2).

- ***Real-Time interaction and distribution via social media***: Plaintiff's Treatment called for real-time interaction and distribution via social-media platforms. (Cmplt. ¶ 29; Lebowitz Decl. ¶ 4).

- ***Organic and unscripted format***: Plaintiff's Treatment featured a "real-time, organic, and unscripted format." (Def. Opp. Br. at 13; Cmplt. ¶ 26).

- ***An invitation and "welcome" to the "party"***: Plaintiff's Treatment was designed to "invite a viewer *into* an experience (*i.e.*, a 'party'), rather than bringing something *from* the livestream into the viewer's context." (Def. Opp. Br. at 13 (emphasis in original); Lebowitz Decl. ¶¶ 5-6, Exs. 1-2)).

- ***Use of framing in a vertical aspect ratio***: Plaintiff's Treatment featured talent "using a selfie-friendly vertical aspect ratio with a livestreaming POV." (Def. Opp. Br. at 13-14; Cmplt. ¶¶ 47, 61-62, 76).

- ***Switching to and from framing in a horizontal aspect ratio***: Plaintiff's Treatment, featured performance-based episodes shot in a horizontal-aspect ratio. (Def. Opp. Br. at 14; Hwang Decl., Ex. B. at ¶¶ A5, B3)).

- ***Use of artists, labels, and representatives***: Plaintiff's Treatment featured talent selected from an array of artists, labels, and representatives. (Def. Opp. Br. at 14).

- ***Intimate access***: Plaintiff's Treatment focused on intimate close-up shots, making the artists the focus, as opposed to the sets and staging. (Hwang Decl., Exs. A and B).

***Plaintiff's Response:*** Admitted, to the extent it is limited to a statement contained in Walkie Check's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint, but denied and raising a genuine issue of material fact to the extent Defendants seek to limit the scope of purported similarities between Walkie Check's "House Party" Production and Defendant's version of House Party. (DE 64 at 12-14 ("Def. Opp. Br.")). As Def. Opp. Br. plainly declares, the list quoted above is meant to provide a "minimum"

15

baseline by which to compare "House Party" Production with Defendants' version of the show and there are other similarities that either exist or may exist, particularly when reviewed in conjunction with fact discovery that has not yet occurred, and after analyses through television and video experts whom Plaintiff intends to retain. (*Id.* at 12).

Walkie Check also objects to this paragraph to the extent: (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

17. The use of "House Party" as a title, for example, is a common occurrence. A search of the Internet Movie Database (IMDb) reveals 72 other works with the identical title "House Party" and 539 total works that use "house party" in their title. (Hwang Decl. ¶ 10, Ex. H (printout of https://www.imdb.com/find?q=house%20party&s=tt&exact=true&ref_=fn_al_ttex)); *id.* ¶ 11, Ex. I (printout of https://www.imdb.com/search/title/?title=house+party)). In addition, a now-defunct livestreaming application known as "Houseparty" was created with the aim of facilitating "spontaneous" group chats of up to 8 users at a time. (*Id.* ¶ 12, Ex. J (printout of https://www.theverge.com/2020/4/29/21229590/houseparty-how-to-video-chat-call-games-talk-friends-app-ios-android)).

***Plaintiff's Response***: Denied, and raising a genuine issue of material fact as to whether the title "House Party" is common, particularly when applied to the unique and novel nature of Walkie Check's "House Party" Creation. Furthermore, reference to the now-defunct livestreaming application called "Houseparty" raises a genuine issue of material fact regarding the unique and novel nature of Walkie Check's "House Party" Creation. Specifically, Plaintiff recognized how strongly this application confirmed the uniqueness and novelty of Walkie

Check's "House Party" Creation and shared multiple articles about it to various BET executives seeking to spark discussions about how Internet technology was evolving in a manner to allow increased reliance on it as a distribution vehicle. (Lebowitz Opp. Decl. at ¶ 9, Exhs. 11-13).

Walkie Check also objects to this paragraph to the extent: (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

18. Through discovery, the parties now have 40 total episodes (*see id.* ¶ 5, Ex. C), including 11 of the episodes that Plaintiff previously claimed bore a "particularly striking similarity" to Defendants' BET Series. (*See* Lebowitz Decl. at ¶ 9, Ex. 3 (listed as episodes 22, 33, 34, 49, 50, 51, 53, 55, 56, 83 and 85)).

*Plaintiff's Response*: Denied, and raising a genuine issue of material fact as to the episode that are available and those that bear a substantial similarity to Walkie Check's "House Party" Creation. (*E.g.*, Lebowitz Opp. Decl. at ¶¶ 16-30, Exhs. 19-23). For example, Defendants represent in Exhibit C to the Hwang Decl. that an episode entitled "BET House Party Presents: A 106 & Park Couchside Concert with MK xyz," is available for inspection by the Court and is included in the 40 total episode count noted above. (*E.g.*, Hwang Decl. Exh. C, D# 34). Technically, this is not accurate and raises a genuine issue of material fact because Walkie Check brought this episode to the Court's attention when Steven Lebowitz searched the Internet, over the course of many days, and was unable to find the episode in its entirety anywhere; finding only video clips from it that were disclosed to Defendants in discovery and that they have now included as part of Exhibit C to the Hwang Decl. (*E.g.*, Lebowitz Opp. Decl. at ¶¶ 19, Exh. 20, P# 35).

17

Walkie Check also objects to this paragraph to the extent: (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

19. A review of each of the available episodes demonstrates that the episodes Plaintiff has singled out contain no similarities in protectable expression to the Treatment:

- #22 CHEF VELVET – LIVE FROM KITCHEN – 4/22/20 – 1 PM: features Celebrity Chef Velvet cooking vegan food from an industrial kitchen over the course of the 11-minute livestreamed episode.

- #33 MARIO W/ DJ VICIOUS – COUCHSIDE CONCERT – 5/8/20 5 PM: features R&B singer, Mario, singing and riffing along with live music played by DJ Vicious. The two appear in a split screen for the viewing audience but are respectively livestreaming from their own homes over the course of the 45-minute livestreamed episode.

- #34 ANGELA YEE + DONNELL RAWLINGS – REAL TALK – PUSHED FROM 5/11/20 – 1PM TO 8/3/20: features radio personality, Angela Yee, and comedian, Donnell Rawlings, discussing their efforts to perform outdoors for live audiences while observing COVID-19 protocols, and engaging in Q&A from pre-selected fan submissions. The two appear in a split screen for the viewing audience but are respectively livestreaming from their own homes over the course of the 48-minute livestreamed episode.

- #49 ADÉ – BLACK MUSIC MONTH – 6/8/20: features singer, Adé, performing new music from his project entitled "wyd after?" for Black Music Month. Adé appears live from a studio over the course of the 12-minute livestreamed episode.

- #50 INDIA SHAWN – 6/10/20: features singer and songwriter, India Shawn, performing songs from her various albums for Black Music Month. India appears live from a nondescript location over the course of the 11-minute livestreamed episode.

- #51 SAMMIE – COUCHSIDE CONCERT – 6/12/20: features singer, Sammie, performing new works for Black Music Month. Sammie appears from a nondescript location over the course of the 10-minute livestreamed episode.

- #53 MUMU FRESH – COUCHSIDE CONCERT – 6/18/20: features singer, Maimouna Youssef, known as Mumu Fresh, performing her original works for

- Black Music Month.  Mumu Fresh appears from her couch over the course of the 15-minute livestreamed episode.

- #55 ROTIMI – COUCHSIDE CONCERT – 6/19/20: features actor and singer, Rotimi, performing for Black Music Month.  Rotimi appears from his home over the course of the nearly 10-minute livestreamed episode.

- #56 BOSCO – BLACK MUSIC MONTH – 6/22/20: features musical artist, Bosco, performing her new works for Black Music Month.  Bosco appears from an outdoor, backyard area accompanied by a band, over the course of the 6-minute livestreamed episode.

- #83 RAHEEM DEVAUGHN – COUCHSIDE CONCERT – 11/20/20 – 3 PM: features three-time Grammy nominated musician, Raheem DeVaughn, performing live.  Raheem appears from a studio over the course of the 4-minute livestreamed episode.

- #85 THE LEGENDARY CHRIS WASHINGTON – INAUGURATION – 1/20/21 – 2 PM: features DJ Chris Washington playing and mixing music live for The Virtual Inaugural After Party, following President Joe Biden and Vice President Kamala Harris' inauguration.  The legendary DJ appears from a home studio over the course of the nearly 16-minute livestreamed episode which is co-sponsored by BET and Howard University.

(*See* Hwang Decl., Ex. C (listed as Episode Nos. 4, 8, 26, 14, 16, 18, 20, 21, 22, 36, and 38)).[3]

***Plaintiff's Response***:  Denied, and raising a genuine issue of material fact as various of these episodes (if not all) are substantially similar to Walkie Check's "House Party" Creation because, at a minimum, they were all: (1) live streamed, shot using either horizontal or vertical aspect ratio, (2) shot in a small venue such as a studio, home, or similar such setting, (3) unscripted in nature; (4) distributed via social media as opposed to linear platforms; and (5) allowed viewers wherever located to interact either with each other or online or with the artist; these elements combining in a unique and novel manner as expressed in Walkie Check's "House Party" Creation to provide intimate access to each guest.  (*E.g.*, Hwang Decl., Exh. C, Lebowitz Opp. Decl. at ¶¶ 16-30, Exh. 20).

---

[3] Plaintiff incorrectly notes that the episode featuring Mumu Fresh was posted on June 17, 2020, instead of June 18, 2020.  (*See* Hwang Decl., Ex. C. (listed as Epidode No. 20)).

Walkie Check also objects to this paragraph to the extent: (i) it fails to comply with the requirement that "each numbered paragraph . . . contain only one factual assertion" (Rules at § 5(C)(ii)); and (ii) fact discovery in this action has yet to address the subject matter of this paragraph.

Dated:   New York, New York
         March 24, 2023

                                          **ALDOUS PLLC**


                                          By:   */s/ Kenneth E. Aldous*
                                                Kenneth E. Aldous

                                          420 Lexington Avenue, Suite 300
                                          New York, New York 10170-0399
                                          (212) 856-7281 (tel)
                                          (646) 607-9363 (fax)
                                          kaldous@aldouspllc.com

                                          *Attorneys for Plaintiff*
                                          *Walkie Check Productions, LLC*